# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT COLLAZO,<br><br>                           Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                           Respondent. | Case No.: 13-CR-4514-JO-7<br><br>**ORDER DENYING PETITIONER'S MOTION TO REDUCE SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

    Petitioner Robert Collazo ("Petitioner") filed a motion to reduce his custodial sentence pursuant to 28 U.S.C. § 2255 claiming that he received ineffective assistance of counsel during both his trial and sentencing. Dkt. 761. For the reasons below, the Court DENIES Petitioner's motion.

///

///

///

# I. BACKGROUND

Petitioner seeks to reduce his sentence for smuggling drugs into Donovan State Prison on behalf of the Mexican Mafia. Dkt. 398, Pre-Sentence Report ("PSR") at 9. On December 19, 2013, Petitioner was indicted for his involvement in this scheme and charged with (1) conspiracy to conduct enterprise affairs through a pattern of racketeering and (2) conspiracy to distribute controlled substances. *Id.* at 6.

During Petitioner's trial in June 2015, a juror noted that his English language skills were somewhat limited, but defense counsel did not seek to excuse him from the panel. The Court initially questioned this juror, Juror 41, because he changed two of his answers on the juror questionnaire. Dkt. 551, Jury Selection Transcript at 23. Specifically, in answering the question "do you have any strong feelings about gangs that would interfere with your ability to be fair and impartial," Juror 41 initially wrote "yes" but later crossed this out and wrote "no." *Id.* at 67–69. He did the same thing when asked if he would have trouble being impartial regarding drugs. *Id.* at 23. When questioned by the Court during *voir dire*, Juror 41 said he could in fact be impartial regarding gangs and drugs, and that the reason he changed his answers was because he initially did not understand the questions. *Id.* at 68. The Court then inquired further about Juror 41's English language skills. *Id.* While Juror 41 stated that his English is "not 100%" and that he takes "a little while with questions," he also noted that his English skills were sufficient for day-to-day life. *Id.* at 68-69.

After the jury convicted Petitioner, Judge Benitez[1] sentenced him to 360 months in prison. Dkt. 365, Jury Verdict Form; Dkt. 434, Judgment. Because Judge Benitez found that Petitioner was a career offender under U.S.S.G. § 4B1.1(b)(1), and because this case involved a crime of violence with a mandatory maximum sentence of life in prison, he calculated the base offense level as 37. Dkt. 561, Sentencing Hearing Transcript at 23–

---

[1] Judge Benitez presided over Petitioner's trial and sentencing. *See* Dkts. 365, 431. The case was transferred to the undersigned on August 15, 2023. Dkt. 757.

24. While the United States Probation Office's Pre-Sentence Report recommended a two-point upward adjustment for Petitioner's role in the offense due to his status as a high-ranking member of the Mexican Mafia, PSR at 12, 31, Judge Benitez ultimately declined to include such an adjustment, stating "I don't think a role increase would be appropriate." Sentencing Hearing Transcript at 23–24. Using a base offense level of 37, the Court calculated Petitioner's final guideline range as 360 months to life and sentenced him to 360 months in custody. Dkt. 434.

Petitioner filed this § 2255 motion on September 22, 2023, arguing that his sentence should be reduced because he received ineffective assistance of counsel during both his trial and sentencing. Dkt. 761. In particular, he alleges that his counsel's performance was constitutionally defective because she failed to (1) strike a juror with English language limitations; (2) argue that the judge should use a lower drug amount for sentencing purposes; and (3) assert that the judge should not apply an aggravated role enhancement in his sentencing calculations. In his motion, Petitioner asks that the Court resentence him using what he believes is the proper guideline range for his offense—151 to 188 months of custodial time. *Id.* at 17.

## II. DISCUSSION

To resolve Petitioner's ineffective assistance of counsel claims, the Court will first address whether defense counsel was objectively unreasonable in (1) proceeding with Juror Number 41; (2) failing to argue that the court should use a lower quantity of drugs in calculating the guideline range; and (3) failing to argue that the court should not apply an aggravated role enhancement in calculating the guideline range. If so, it will then determine whether Petitioner suffered prejudice as a result of these failures.

A prisoner may collaterally attack a sentence on grounds of ineffective assistance of counsel. *United States v. Span*, 75 F.3d 1383, 1387 (9th Cir. 1996). To prevail on such a claim, the petitioner must show that his counsel's performance was constitutionally deficient and that, as a result of this poor performance, the petitioner suffered prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because both

poor performance and prejudice are required elements, failure to show one or both prongs is fatal to an ineffective assistance of counsel claim. *Id.* at 697.

To constitute constitutionally deficient representation, a lawyer's representation must be objectively unreasonable. *Id.* at 697–98. There is a "strong presumption that counsel's conduct falls within the wide range of acceptable professional assistance." *Id.* at 689. Thus, counsel is objectively unreasonable only when their conduct was so poor that it made the trial a "mockery or farce." *Dodd v. United States*, 321 F.2d 240, 243 (9th Cir. 1963); *see also Washington v. United States*, 297 F.2d 342, 344 (9th Cir. 1961) (stating that ineffective assistance of counsel requires conduct which is "shocking to the conscience of the court"). A petitioner's mere disagreement with counsel over trial strategy—such as decisions made during *voir dire*—is insufficient to show that counsel was constitutionally ineffective. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); *United States v. Quintero-Barraza*, 78 F.3d 1344, 1349 (9th Cir. 1995) (holding that counsel's decisions regarding jury selection are tactical and entitled to deference). Further, counsel is not ineffective for failing or refusing to raise frivolous or meritless arguments. *See Strickland*, 466 U.S. at 687–88; *Morgan v. Marshall*, No. CV 08-4784-RSWL OP, 2010 WL 4313767, at *11 (C.D. Cal. July 20, 2010) ("There is, of course, no obligation to raise meritless arguments on a client's behalf.").

**A. Failure to Strike Juror with English Limitations**

Petitioner argues that his attorney should have objected to or moved to strike Juror 41 due to his limited English language abilities. Given this juror's showing of English proficiency, the Court finds that Petitioner's counsel was not ineffective in declining to do so.

In order to be qualified to serve on a jury, a juror must only be able "to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form." *See* 28 U.S.C. § 1865(b)(2); *People of Territory of Guam v. Palomo*, 511 F.2d 255, 258 (9th Cir. 1975) (finding a juror qualified

where she filled out the juror questionnaire in English and later understood and answered *voir dire* questions in English, even though she stated that she had "trouble understanding the questions"); *United States v. Changco*, 1 F.3d 837, 840 (9th Cir. 1993) (noting that a juror's English is insufficient where they are unable to "follow the events of the trial, comprehend the judge's instructions or deliberate effectively with the other jurors"); *Earle v. United States*, No. C.A. 08-11637-MLW, 2009 WL 2634569, at *9 (D. Mass. Aug. 24, 2009) (holding that counsel was not deficient in declining to object to juror who "had a little bit of trouble" understanding the questionnaire but spoke English at her factory job).

  Here, Juror 41 demonstrated the baseline level of English-language proficiency required to qualify for jury service. He filled out the jury questionnaire in English. Jury Selection Transcript at 23, 67–69. When Judge Benitez asked him why he had changed two of his answers on the questionnaire, Juror 41 responded in English that while he struggled with certain words, his English skills were good enough to participate in everyday tasks such as going to the store or bank. *Id.* at 68; *see Earle*, 2009 WL 2634569, at *9. Juror 41 did not state or otherwise indicate that he was unable to follow the facts of the case, effectively deliberate, or understand the Court's instructions. Jury Selection Transcript at 67–69; *see Changco*, 1 F.3d at 840. Given the above baseline showing of proficiency, Petitioner's counsel strategic decision not to object or strike the juror was not objectively unreasonable; instead, it fell within the "wide range of acceptable professional assistance." *Strickland*, 466 U.S. at 689; *see Quintero-Barraza*, 78 F.3d at 1349 (stating that the decision not to strike a particular juror is a matter of trial strategy and presumed to be valid). Because he has not made a showing of objectively unreasonable representation, Petitioner's ineffective assistance of counsel claim on this ground fails.

**B. Failure to Challenge Drug Amounts**

  Petitioner also argues that his counsel should have urged the Court to use a lower drug amount in calculating his sentencing guideline range. Because the drug amounts did

not impact the sentencing guidelines in this case, the Court finds that Petitioner was not unreasonable in declining to advance this argument.

While a defendant's base offense level in a drug case is generally determined by the type and quantity of drugs, a higher base offense level may apply if the defendant qualifies as a "career offender."  See U.S.S.G. § 4B1.1(b) ("[I]f the offense level for a career offender . . . is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.").  A defendant is a career offender when (1) they have at least two prior convictions related to drug-trafficking or violence and (2) the current offense is also a drug trafficking crime.  U.S.S.G. § 4B1.1(a).  Regardless of the offense level that would otherwise apply, if a charge carries a mandatory maximum sentence of life imprisonment and the defendant is a career offender, the base offense level will be 37.  U.S.S.G. § 4B1.1(b).

Here, Petitioner's status as a "career offender," and not the quantity of drugs, determined the base offense level and drove the resulting guidelines in this case.  For sentencing purposes, Petitioner qualified as a "career offender" because (1) he had at least two prior convictions related to drug-trafficking or violence and (2) the current offense was also a drug trafficking crime.  PSR at 13; Sentencing Transcript at 23.  This, coupled with the fact that the charge had a mandatory maximum sentence of life imprisonment, meant that Petitioner's base offense level was 37, regardless of drug type or quantity.  See U.S.S.G. § 4B1.1; Sentencing Transcript at 23–24.  Even if the Court accepted that a lower quantity of drugs should apply for sentencing purposes, a lower guideline range would not have resulted—because the higher base offense level driven by Petitioner's career offender status would override the lower base offense level based on drug quantity.  See U.S.S.G. § 4B1.1 ("[I]f the offense level for a career offender . . . is greater than the offense level otherwise applicable, the offense level from the table in this subsection shall apply.").  Because asking the Court to apply a lower quantity of drugs to the guideline calculations would not have made a difference in the guideline calculations, Petitioner's counsel was not unreasonable in declining to make this futile argument.  See

*Strickland*, 466 U.S. at 687–88; *Morgan*, 2010 WL 4313767, at *11 ("There is, of course, no obligation to raise meritless arguments on a client's behalf."). Accordingly, Petitioner's claim also fails on this ground.

### C. Failure to Argue Inapplicability of Role Enhancement

Finally, Petitioner's claim that counsel should have challenged the Court's application of a role enhancement in sentencing fails because the Court did no such thing. Although the Pre-Sentence Report included a two-point upward adjustment for Petitioner's role in the offense, the record is clear that a role enhancement was ultimately *not* adopted by the Court. *See* Sentencing Hearing Transcript at 23–24 (Judge Benitez: "I don't think that a role increase would be appropriate."). Given that the Court imposed no role enhancement, it necessarily follows that counsel was not objectively unreasonable in declining to challenge the enhancement. *See Strickland*, 466 U.S. at 687–88; *Morgan*, 2010 WL 4313767, at *11.

Because Petitioner has not shown that his counsel's performance during trial and sentencing was objectively unreasonable, the Court denies his motion to reduce his sentence pursuant to 28 U.S.C. § 2255 without addressing whether he was prejudiced by these actions. *See Strickland*, 466 U.S. at 697.

### III. CONCLUSION

For the reasons discussed above, the Court DENIES Petitioner Robert Collazo's motion to reduce his sentence. Dkt. 761.

**IT IS SO ORDERED**.

Dated: May 17, 2024

_____
Honorable Jinsook Ohta
United States District Judge